IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2013 MAR 28  AM 10: 48
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| DDB TECHNOLOGIES, L.L.C., § | |
| PLAINTIFF, § | |
| § | |
| V. § | CAUSE NO. A-11-CV-1014-LY |
| § | |
| FOX SPORTS INTERACTIVE § | |
| MEDIA, LLC; STAT CREW § | |
| SOFTWARE, INC.; CSTV NETWORKS, § | |
| INC. D/B/A CBS SPORTS NETWORK; § | |
| AND CSTV ONLINE, INC., § | |
| DEFENDANTS. § | |

### MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT AND CLAIM CONSTURCTION

Before the court are the issue of claim construction and Defendants' Motion for Summary Judgment of Invalidity for Indefiniteness filed July 9, 2012 (Doc. #38); DDB Technologies, L.L.C.'s Opposition to Defendants' Motion for Summary Judgment of Indefiniteness filed July 20, 2012 (Doc. #45); and Defendants' Reply Brief in Further Support of their Motion for Summary Judgment of Invalidity for Indefiniteness filed August 3, 2012 (Doc. #46). The court conducted a hearing on the summary-judgment motion and claims-construction on August 17, 2012. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).

### I. Introduction

Plaintiff DDB Technologies, L.L.C. ("DDB") asserts claims against Defendants Fox Sport Interactive Media, LLC; Stat Crew Software, Inc.; and CSTV Networks, Inc. d/b/a CBS Sports Network and CSTV Online, Inc. for infringement of four related patents: U.S. Patent Nos. 5,526,479 (the '479 Patent); 5,671,347 (the '347 Patent); 6,204,862 (the '862 Patent); and 7,373,587 (the '587 Patent). All four patents claim priority to the same 07/920,355 application, which later issued as the

'479 Patent and was filed on July 29, 1992. The patents all claim methods for transmitting information for use in a computer simulation of a live event. The specification of each patent states that its method can be used to simulate "a sporting event such as a baseball game" or "such events as the activities involving a stock market, an election, an auction and any other event where a finite set of possible action types can be defined prior to the beginning of the event."

The parties dispute the construction of ten claim terms. In addition, Defendants have filed a summary-judgment motion asserting indefiniteness, to which DDB has responded, and Defendants have replied. *See* 35 U.S.C. § 112, ¶¶ 2, 6 (2001).

## II. Analysis

### A. Summary-Judgment Standard

With regard to procedural issues not unique to patent law, the law of the regional circuit controls. *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1358 (Fed. Cir. 2005). This includes summary-judgment motions filed pursuant to Federal Rule of Civil Procedure 56(c). *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 707 (Fed. Cir. 2005). In this case, Fifth Circuit law controls.

Summary judgment should be granted if the record, taken as a whole, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1339 (Fed. Cir. 2006). The United States Supreme Court has interpreted the plain language of Rule 56(c) to require the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist creating a genuine issue for trial. *See Wallace v. Texas Tech Univ.*, 80 F. 3d 1042, 1047 (5th Cir. 1996). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield*, 436 F.3d at 557; *see also Little*, 37 F.3d at 1075. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.*

In order to determine whether summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986).

### B. Law on Indefiniteness

Indefiniteness is an issue of validity. A determination of indefiniteness with regard to patent claims is also a question of law for the court. *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198

F.3d 1374, 1378 (Fed. Cir. 1999). In fact, the legal determination of indefiniteness is "drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Communications, LLC v. International Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998). Should claim language be determined indefinite, the claim itself is invalid. 35 U.S.C. § 112, ¶ 2 (Section 112, ¶ 2); *Honeywell*, 341 F.3d at 1338 (citing *Exxon Research & Eng'g v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)).

Defendants have the burden of establishing indefiniteness by clear and convincing evidence. *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1331 (Fed. Cir. 2010). This presumption stems from the deference given to "the expertise of patent examiners presumed to have done their job." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992). In light of this presumption, "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." *Exxon Research and Eng'g Co. v. United States*, 265 F.3d 1371, 1380 (Fed. Cir. 2001). A claim must be found definite unless it is "not amenable to construction or insolubly ambiguous," such that it "depend[s] solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347-48 (Fed. Cir. 2005); *see also Exxon*, 265 F.3d at 1375.

The definiteness requirement does not require absolute clarity. *Datamize, LLC*, 417 F.3d at 1347. Instead, a claim term is definite as long as "the meaning of the claim is discernable, even though the task may be formidable and the conclusion may be one over which reasonable persons would disagree." *Exxon*, 265 F.3d at 1375. As such, definiteness does not demand a level of precision that answers all infringement questions. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005); *see also In re Marosi*, 710 F.2d 799, 802-03 (Fed. Cir. 1983). All that

is required for a claim term to be definite is some objective anchor to be provided in order to allow the public to determine the scope of the claimed invention. *Datamize LLC*, 417 F.3d at 1350. Claim terms that are added during prosecution to distinguish over prior art set forth objective anchors that establish definiteness. *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 780 (Fed. Cir. 2002). In addition, examples provided in the specification constitute objective anchors that establish definiteness. *Datamize*, 417 F.3d at 1352.

General principles of claim construction apply when assessing indefiniteness. *Datamize*, 417 F.3d at 1348. As such, indefiniteness requires "consideration of primarily the intrinsic evidence, *viz.*, the claim language, the specification, and the prosecution history." *Enzo*, 599 F.3d at 1332. "When an analysis of intrinsic evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) (emphasis in original); *see also id.* ("claim 1 is not indefinite as construed from intrinsic evidence, therefore reference to extrinsic evidence is improper"). Moreover, "what the patentee subjectively intends the claims to mean is largely irrelevant to the claim's objective meaning and scope." *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1378-80 (Fed. Cir. 2000).

### C. Indefiniteness of "physical exertion and skill" Limitation

Defendants assert that each of DDB's claims containing "physical exertion and skill" is invalid as fatally indefinite under Section 112, ¶ 2. Defendants contend that every claim of all patents-in-suit requires the simulation of a live event's "action[s] involving physical exertion and skill," a limitation added during prosecution to distinguish prior art related to chess and bridge. Defendants argue that the patent claims, specification, and prosecution history fail to define the

contemplated degree of "physical exertion and skill," or where that threshold would begin, and that without any teaching or common understanding as to the degree of "physical exertion and skill" required, the public has no objective anchor to determine which live events are within the scope of the claim. Thus, Defendants assert, the failure to provide any objective meaning renders the term "physical exertion and skill" indefinite, and the claims that include this limitation are, therefore, invalid as a matter of law.

In response, DDB argues that the intrinsic evidence confirms that the claim term "action involving physical exertion and skill" is definite. DDB contends that the law is clear that the intrinsic evidence is the most important evidence to consider when addressing indefiniteness. Thus, given that the intrinsic evidence answers the definiteness question here, DDB argues, the extrinsic evidence cited by Defendants should be accorded little, if any weight. The court agrees.

The court finds that the intrinsic evidence confirms that the claim term "action involving physical exertion and skill" is sufficiently definite. First, the term as presented in the context of the claim language, establishes that an "action involving physical exertion and skill" is limited in scope to sporting events—"live events" that include "action[s] involving physical exertion and skill" (*e.g.*, a grand slam, a stolen base, a thrown strike, and so forth) and are governed by "a set of rules" used to determine "a status change resulting from the occurrence of a sub-event" (*e.g.*, the rules of baseball dictate that a grand slam increases the score by four runs).[1]

---

[1] For example, Claim 1 of the '479 Patent provides:

> A method of broadcasting information about a live event that is composed of a sequence of discrete sub-events wherein a set of rules governs the event so that a status change resulting from the occurrence of a sub-event is determined by the set of rules, comprising the steps of:
> creating a set of symbols useful in a computer simulation, wherein each

Second, the prosecution history provides objective anchors showing actions that fall inside the scope of the claims (*e.g.*, actions that may occur in sporting events such as baseball) and actions that fall outside the scope of claims (*e.g.*, actions that may occur in nonsporting events such as bridge, chess, stock markets, elections, auctions, and the actions of virtual characters that occur in a video game). During prosecution, the examiner informed the applicants that the pending claims were broad enough to encompass events such as bridge or chess and suggested that the applicants amend the claims to distinguish from those events. In response, the applicants amended the claims to: (1) require that the symbols useful in a computer simulation be representative of "an action involving physical exertion and skill" and (2) add the other limitations that provide the context in which "physical exertion and skill" must be interpreted, namely that the "live event" be governed by "a set of rules" such that "a status change resulting from the occurrence of a sub-event is determined by the set of rules." By intentionally limiting the claims, the applicants disclaimed nonsporting events from the scope of the claims. *See Felix v. Am. Honda Motor Co., Inc.*, 562 F.3d 1167, 1182 (Fed. Cir. 2009).

---

      symbol is representative of an action involving physical exertion and skill;
         generating a sequence of symbolic descriptions, each description being a representation of one of the discrete sub-events, and includes at least one symbol from said set of symbols wherein said symbol may be used in a computer simulation to effect a change in an indicated status of an event in connection with a computer simulation program that operates in accordance with the set of rules governing the event;
      creating a database file corresponding to the event;
      updating said database file with a generated sequence of symbolic descriptions; and
      broadcasting said symbolic descriptions in said updated database file.

U.S. Patent No. 5,526,479, col. 16, ll. 38-59 (filed June 11, 1996).

Likewise, the specification provides several specific examples of "action[s] involving physical exertion and skill," such as a strike, a ball or a stolen base in a baseball game, as provided in Table 1:

### TABLE I

| | |
|---|---|
| Strike | (no parameters) |
| Ball | (no parameters) |
| GroundBall | Location |
| FlyBall | Location |
| ForceOut | Base, Runner, Fielder |
| StolenBase | Runner, Base |
| FieldedBall | Fielder, Location |
| CaughtFlyBall | Fielder, Location |
| ThrownBall | Thrower, Receiver |
| RunToBase | Runner, Base |

'479 Patent, col. 14, ll. 45-59.

"A patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1341 (Fed. Cir. 2003) (citing *In re Marosi*, 710 F.2d at 802–03). The court finds that the examples in Table 1 of the specification are sufficient to enable a person of ordinary skill in the art to determine the scope of the claims and intended term limitations, thereby establishing definiteness. *See All Dental*, 309 F.3d at 780 (finding claim term definite when term used to distinguish prior art). Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment of Invalidity for Indefiniteness filed July 9, 2012 (Doc. #38) is **DENIED**.

### D. General Principles Governing Claim Construction

It is well-established that determining infringement is a two-step process. *See Markman*, 52 F.3d at 976 ("[There are] two elements of a simple patent case, construing the patent and determining

whether infringement occurred . . . ."). First, the meaning and scope of the relevant claims must be ascertained. *Id.* Second, the properly construed claims must be compared to the accused device. *Id.* Step one, claim construction, is the current issue before this court.

"Interpretation of [claim terms] . . . is an issue for the judge, not the jury . . . ." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). To ascertain the meaning of claims, the court looks primarily to the intrinsic evidence: the claims, the specification, and the patent's prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005) (*en banc*); *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Markman*, 52 F.3d at 979; 35 U.S.C. § 112, ¶1. A patent claim must be read or interpreted in the light of the specification of which it is a part. *Phillips*, 415 F.3d at 1316. For claim-construction purposes, the specification may reveal "a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Id.* Indeed, the specification's written description "may act as a sort of dictionary, which explains the invention and may define terms used in claims." *Markman*, 52 F.3d at 979. "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiment. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994). The court also must be mindful that "when a patentee uses a claim term throughout the entire specification, in a manner consistent with only one meaning, he has defined that term by implication." *Bell Atl. Network Servs., Inc. v. Covad*

*Communications Group, Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001). However, "case law is clear that an applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention . . . . [I]n short, it is the claims that measure the invention, as informed by the specification." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001). It is axiomatic that although claims must be read in light of the specification, limitations from the specification may not be imported into the claims. *Playtex Prods., Inc. v. Proctor & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005).

The "words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective date of the patent application." *Phillips*, 415 F.3d at 1313 (citing *Innova/Pure Water, Inc. v. Safari Walter Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004); *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003)). There is a "heavy presumption in favor of the ordinary meaning of claim language." *Johnson Worldwide Assoc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999).

There are two limited exceptions to the general rule that claim terms are assigned their ordinary and customary meaning as understood in the context of the intrinsic evidence: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as its own lexicographer, "the

patentee must clearly express an intent to redefine the term." *Id.* Likewise, to disavow claim scope, the patentee must demonstrate "an intent to deviate from the ordinary and accustomed meaning of a claim term by [using] expressions of manifest exclusion or restriction" that are "clear and unmistakable." *Id.* at 1366. Absent such clear expressions, a court cannot "import limitations from the specification into claims" or "redefine words" in the claims, even if a limitation is found in every embodiment of the specification. *Id.*

Although extrinsic evidence, such as dictionaries, may be helpful to the court, such evidence is less reliable than intrinsic evidence. *Phillips*, 415 F.3d at 1318. Extrinsic evidence may be useful when considered in the context of the intrinsic evidence, *id.* at 1319, but it cannot "alter a claim construction dictated by a proper analysis of the intrinsic evidence," *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004).

### E. Disputed Terms

The parties dispute the construction of ten terms. Those terms and the court's construction of those terms are grouped below.

### 1. "An action involving physical exertion and skill"

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips,* 415 F.3d at 1313. There is a "heavy presumption in favor of the ordinary meaning of claim language." *Johnson,* 175 F.3d at 989. Given this "heavy presumption," and taking into consideration the court's finding of definiteness, the court will interpret the term "[a]n action involving physical exertion and skill" to have its plain and ordinary meaning. *See id.*

## 2. "Broadcasting"

DDB proposes that this term be construed as "The transmission of data to multiple viewer computers using one-way or two-way communication techniques." Defendants propose "One-way transmission of the same date simultaneously to multiple viewer computers." Although the parties agree that the term means the transmission of data to multiple viewer computers, they disagree over whether the term covers one-way or two-way transmissions or whether it is limited to one-way transmissions of the same data simultaneously. The court finds that the intrinsic evidence supports DDB's construction.

The claims themselves define the term "broadcasting" to cover both one-way and two-way transmissions. For example, claim 13 of the '347 Patent recites the step of "broadcasting said transmission data" without any qualifying language specifying the particular transmission type. U.S. Patent No. 5,671,347, col. 18, 1. 21 (filed Sep. 23, 1997). Claims 15-16, which depend from claim 13, further recite:

> 15. The method of claim 14, wherein said step of broadcasting comprises the step of automatically transmitting updated contents of said database files along a multiplexed communication channel.
> 16. The method of claim 14, wherein said step of broadcasting comprises the steps of:
> receiving a request from a viewer computer for access to a database file corresponding to one of said plurality of events and
> transmitting an update of the requested database file to the requesting viewer computer.

'347 Patent, col. 18, ll. 26-36. Further, the dependent claims that defined "broadcasting" to include both one-way and two-way transmissions were also included as part of DDB's original patent application.

Because the intrinsic evidence establishes that the term "broadcasting" covers both one-way and two-way transmissions and is not limited to one-way transmissions, the court adopts DDB's construction. Accordingly, the court construes the term "Broadcasting" to mean ***"The transmission of data to multiple viewer computers using one-way or two-way communication techniques."***

**3. "Computer simulation" "Computer simulation operating in accordance with the set of rules" "Computer simulation of a given live event operating in accordance with the associated set of rules"**

DDB proposes that the term "Computer simulation" be construed as "A representation of the progression of the sub-events (plays) of an event in a manner that correlates to the actual event, wherein the representation is derived from the sub-events (plays) of the event and displayed on a computer as graphics, text or animation," with no separate construction for the terms in the phrases that include "Computer simulation." Defendants propose the following construction for all terms and phrases containing the term "Computer simulation": "Creating an animated representation of the progression of the live event that gives the viewer the illusion of physical movement using a computer algorithm on a viewer's computer that calculates the live event's current state by applying the rules of the live event to the live event's previous state and the current inputs."

The court finds that Defendants' construction is dictated by the intrinsic record. As stated previously, a patent claim must always be read or interpreted in light of the specification. *Phillips*, 415 F.3d at 1316. However, courts are not required to construe every limitation present in a patent's asserted claims. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Rather, claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568

(Fed. Cir. 1997). When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it. *O2 Micro Int'l Ltd.*, 521 F.3d at 1362.

In this instance, the court finds the language in the specification controlling. First, it requires the computer simulation algorithm to be based on discrete event simulation: "The algorithm used by the viewer's computer is based on standard discrete-event simulation algorithms . . . ." '479 Patent, col. 12, ll. 21-23. Second, the specification dictates that the entirety of the "computer simulation" must be performed on a viewer's computer. The titles of the '862, '479, and '347 Patents are all "Method and Apparatus for Broadcasting Live Events to Another Location and Producing a Computer Simulation of the Events at That Location." *See Exxon Chem. Patents, Inc. v. Lubrizon Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995) (relying in part on title to construe claims). The specification provides for no disclosure of the calculation being performed on any computer other than the viewer's computer in the descriptions of all the patents-in-suit. The specification also provides further reasons why the computer simulation is required to occur on the viewer's computer:

> The present invention relates to a method for broadcasting and viewing live events . . . . The event is then simulated by the viewer's computer, utilizing the computer simulation characterizations of the actions of the event and known simulation techniques.

'479 Patent, col. 1, ll. 15-20. Finally, the specification expressly requires the computer simulation to include animation. '479 Patent, col. 10, ll. 1-4, col. 11, ll. 34-40 and 55-58, and col. 12, ll. 15-18. By describing the "present invention" as using animation, DDB disclaimed any nonanimated computer simulations. *See Alloc, Inc. v. ITC*, 342 F.3d 1361, 1369–70 (Fed. Cir. 2003); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1342-45 (Fed. Cir. 2001).

Therefore, the court adopts Defendants' construction. Accordingly, the court construes the terms "Computer simulation," "Computer simulation operating in accordance with the set of rules," and "Computer simulation of a given live event operating in accordance with the associated set of rules" to mean *"Creating an animated representation of the progression of the live event that gives the viewer the illusion of physical movement using a computer algorithm on a viewer's computer that calculates the live event's current state by applying the rules of the live event to the live event's previous state and the current inputs."*

**4. "Computer simulation program" "A computer simulation program that operates in accordance with the set of rules governing the event"**

Defendants proposed construction relies on its proposed construction for "Computer simulation" in general adopted by the court above: "A program that creates an animated representation of the progression of the live event that gives the viewer the illusion of physical movement using a computer algorithm on a viewer's computer that calculates the live event's current state by applying the rules of the live even to the live event's previous state and the current inputs." DDB's proposed construction relies on its proposed construction of "Computer simulation," which has been rejected by the court.

Therefore, the court adopts Defendants' construction. Accordingly, the court construes the terms "Computer simulation program" and "A computer simulation program that operates in accordance with the set of rules governing the event" to mean *"A program that creates an animated representation of the progression of the live event that gives the viewer the illusion of physical movement using a computer algorithm on a viewer's computer that calculates the live event's current state by applying the rules of the live even to the live event's previous state and the current inputs."*

### 5. "Creating a set of symbols useful in a computer simulation" "Generating a sequence of symbolic descriptions" "Representing at least one of the sub-events"

Defendants propose the following constructions: "Creating a set of symbols to be entered by an observer of the live event, for use in a computer simulating program"; "Generating, by the observer of the live event, a sequence of symbolic descriptions"; and "Generating, by the observer of the live event, at least one of the sub-events." DDB asserts that no construction is necessary because the ordinary meaning of the terms are clear and unambiguous based on the claim language itself. *See, e.g., Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373-75 (Fed. Cir. 2004).

Defendants seek to redefine these terms by specifically requiring that an "observer of the live event" enter symbols and generate sequential symbolic descriptions and subevents. However, the method claims include no such limitation. The court finds that Defendants' inclusion of an "observer" limitation constitutes an improper attempt to import limitations from an embodiment into the claims. *See, e.g., Thorner*, 669 F.3d at 1366. The unambiguous claim language does not need further construction.

Therefore, the court concludes that the terms "Creating a set of symbols useful in a computer simulation," "Generating a sequence of symbolic descriptions," and "Representing at least one of the sub-events" require no construction and construes them as having their respective plain and ordinary meanings as to a person of ordinary skill in the art at the time of the invention and within the context of the claims.

### III. Conclusion

For the above reasons, the court construes the disputed claims as noted. No further claim terms require construction.

**IT IS FURTHER ORDERED** that this cause is **SET** for a Scheduling Conference on May 17, 2013, at 2:00 p.m., in Courtroom No. 7, on the Seventh Floor of the United States Courthouse, 501 West Fifth Street, Austin, Texas. The parties shall meet and confer before the hearing to determine whether or not they can resolve any remaining issues in the case and if not, shall be prepared to discuss with the court the remaining issues in the case and shall jointly propose a schedule through trial.

SIGNED this 28th day of March, 2013.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE